**SIGNED THIS: January 15, 2026**

_____

**Mary P. Gorman
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    25-70081 |
| JEFFREY A. SEGOBIANO, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LEGACY CONSTRUCTION | ) | |
| SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    25-07003 |
| | ) | |
| JEFFREY A. SEGOBIANO, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court is the Defendant's Motion to Dismiss Plaintiff's Complaint. For the reasons set forth herein, the Motion will be granted without prejudice. The Plaintiff will be given an opportunity to file an amended complaint.

## I.      Factual and Procedural Background

Jeffrey A. Segobiano ("Debtor") filed his voluntary petition under Chapter 7 on January 30, 2025. Relevant to the issues here, the Debtor disclosed on his Statement of Financial Affairs that he owned a construction company, MLB Construction Services LLC, that had been operating since 2018. He also disclosed that Legacy Construction Services, LLC had pending lawsuits against MLB and the Debtor in both Illinois and Ohio. The Debtor scheduled Legacy as an unsecured creditor in the amount of $221,600.

Legacy timely filed an adversary complaint against the Debtor requesting that the Debtor's discharge be denied, or alternatively, that the debt owed to it by the Debtor be excepted from his discharge. Attached to the adversary complaint was a copy of a judgment entered in Ohio in favor of Legacy and against both MLB and the Debtor in the amount of $200,000 plus prejudgment interest and costs of suit. Legacy says that the judgment was registered in the Circuit Court in McLean County, Illinois, and that a citation had been issued to the Debtor by the Illinois court in November 2024.

Including the several paragraphs regarding jurisdiction and venue and explaining who the parties are and what their relationship to each other is, the complaint sets forth 53 introductory paragraphs mixing information about the loan Legacy made to the Debtor with allegations about what the Debtor testified to at his creditors meeting and the information contained in his bankruptcy filings. From there, Legacy pleads Count I by incorporating all 53 of the initial allegations in an attempt to set forth a cause of action under §523(a)(2). The

complaint continues with three counts attempted to be pleaded under §727(a)(3), (4)(A), and (5), each incorporating everything pleaded in all the preceding counts. As a result, the final Count IV is comprised of 74 incorporated paragraphs, one paragraph alleging the incorporation of the prior paragraphs, and only three paragraphs specifically pleaded as to the intended cause of action.

The Debtor filed his Motion to Dismiss the adversary complaint, contending that each count failed to state a claim upon which relief can be granted. Legacy filed a brief in opposition to the Motion to Dismiss. Before the Debtor's reply brief was due, his attorney moved to withdraw and was allowed to do so. At the request of his withdrawing attorney, the Debtor was granted additional time to file a reply but failed to file anything further. The Motion to Dismiss is ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Objections to discharge as well as the determination of the dischargeability of a particular debt are core proceedings. 28 U.S.C. §157(b)(2)(I), (J). The issues here arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III.    Legal Analysis

To survive a motion to dismiss, a complaint must allege enough factual allegations to plausibly suggest a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must (1) provide a defendant with fair notice of the claim that is made against him and the grounds for the relief requested and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008. Under the fair notice standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. *Twombly* "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). While detailed specifics may not be required, there must be some facts alleged to support each element of the cause of action. *Id.* at 678-79; *see also Olson v. Champaign Cty.*, 784 F.3d 1093, 1098-99 (7th Cir. 2015).

As for the plausibility requirement, "[a] claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, a court must accept as true all well-pleaded factual allegations contained within a complaint. *Iqbal*, 556

U.S. at 678. Those well-pleaded facts, however, must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. And when pleading fraud, the circumstances constituting the fraud must be pleaded with particularity. Fed. R. Civ. P. 9; Fed. R. Bankr. P. 7009.

Legacy asserts in its brief that it is not required to plead specific legal theories to avoid dismissal for failure to state a claim. That is true. *See King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (citations omitted). But the principle relied on by Legacy holds only that a plaintiff need not cite a specific legal authority as the basis for a claim or identify the claim by a specific title. *Id.* If the facts necessary to state a claim are pleaded, the complaint may stand regardless of whether the cause of action is properly identified. *Id.* Where the facts are insufficient to state any plausible cause of action, however, the complaint will be dismissed. *Twombly*, 550 U.S. at 570.

In considering the complaint here, it is also important to note that statements made "in a pleading may be adopted by reference elsewhere in the same pleading[.]" Fed. R. Civ. P. 10(c); Fed. R. Bankr. P. 7010. But when it would promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" Fed. R. Civ. P. 10(b); Fed. R. Bankr. P. 7010. This Court previously commented on the pitfalls of pleading by incorporation:

> This style of pleading—incorporating by reference everything in the complaint and prior counts whether or not what is incorporated has anything to do with the cause of action attempted to be pleaded in the particular count—is an unfortunately common practice. But the practice of throwing all

> allegations into every count makes it difficult to determine exactly what has been pleaded that might actually be relevant to the particular count. Making a court weed through allegations that might be relevant to something in the case but not to the count at issue is, quite frankly, an annoying practice that does not benefit the pleader.

*LPB MHC, LLC v. Farmers State Bank of Alto Pass (In re LPB MHC, LLC),* 2025 WL 1778767, at *9 (Bankr. S.D. Ill. June 26, 2025). Other courts have expressed similar frustration with the practice. *See, e.g., Stanard v. Nygren*, 2009 WL 10681449, at *4 n.5 (N.D. Ill. Jan. 26, 2009) (complaining that listing facts as common to all counts when they are "nothing of the kind" puts the burden on the court and defense counsel to determine "which facts support which counts"). The Court will discuss each count and attempt to identify the facts pleaded in support of each count. To the extent confusion exists, however, the fault lies with Legacy for failing to clearly plead the facts that support each count.[1]

### Count I

Notwithstanding Legacy's assertion that it need not identify its intended cause of action, Count I is labeled as seeking an exception to discharge under §523(a)(2). Section 523(a)(2) provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

---

[1] Legacy seems to be aware of the inadequacies of its factual presentation because it sets forth more facts and better explanations of its claims in its brief. But those explanations do not save its defective complaint. They simply highlight the fact that the original complaint could have been more clearly pleaded.

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with the intent to deceive[.]

11 U.S.C. §523(a)(2)(A)-(B).

Count I includes allegations that the Debtor and MLB promised to repay to Legacy a $200,000 loan but that the promise was a false representation. No details of when, where, or how the representation was made are included. Count I also alleges that the representation of repayment was made by the Debtor knowing that he did not intend to repay the debt and with the intent to deceive. No factual details in support of these allegations are pleaded. Count I incorporates the first 53 paragraphs of the complaint, but only two of those paragraphs appear to be related to the allegations of a fraudulent misrepresentation regarding payment of the loan. Paragraphs 29 and 30 include the same allegations—actually legal conclusions—as found in Count I that the Debtor made a false promise to repay, that he knew he would never repay the loan, and that he intended to deceive Legacy. No further facts are pleaded on the issue of fraud in the introductory paragraphs of the complaint.

Legacy says that it does not have to identify whether it is trying to state a claim under §523(a)(2)(A) or §523(a)(2)(B). As set forth above, that is true but not necessarily helpful here. Legacy must state a claim under one of the two provisions even if the claim is not specifically labeled. The complaint here fails to state a claim under either provision.

The elements of both causes of action include fraudulent misrepresentation and intent to deceive. *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 507 F.3d 610, 613 (7th Cir. 2007). A factual basis for each element must be included in the complaint to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. Here, Count I lacks any factual allegations regarding fraudulent misrepresentation and intent to deceive and therefore must be dismissed. Although intent may be pleaded generally, it may not be pleaded as just a legal conclusion without any supporting facts. *Schiller DuCanto & Fleck, LLP v. Potter (In re Potter)*, 616 B.R. 745, 751 (Bankr. N.D. Ill. 2020).

A simple breach of contract is not a basis for holding a debt non-dischargeable. *In re Davis*, 638 F.3d 549, 554 (7th Cir. 2011) (citing *United States ex rel. Main v. Oakland City Univ.,* 426 F.3d 914, 917 (7th Cir. 2005) ("failure to honor one's promise is (just) breach of contract")); *Allen v. Freund*, 2017 WL 2728432, at *4 (E.D. Wis. June 23, 2017) ("breach of contract . . . creates only a dischargeable debt"). Promising to pay with an intent not to pay may be fraud. *Holtz v. JPMorgan Chase Bank*, 846 F.3d 928, 932 (7th Cir. 2017). But the underlying facts that support a finding of intent not to pay from the inception of

the loan must be pleaded; just alleging a failure to pay does not by itself support a finding of intent not to pay from the inception of the loan. *Potter*, 616 B.R. at 752-53. Here, Legacy pleads only the conclusion that the Debtor never intended to pay without setting forth any factual basis for the conclusion. Accordingly, Count I fails to state a plausible claim under either §523(a)(2)(A) or §523(a)(2)(B) and must be dismissed.

The dismissal will be without prejudice and with leave to replead. If Legacy chooses to replead, it should consider the Supreme Court's decision in *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018). In *Appling*, the debtor, in an effort to get a law firm to continue to represent him, not only promised that he would pay past due bills but also represented that he would be receiving significant tax refunds and would use the refunds to make the promised payments. When the debtor did not pay and, in particular, did not use the refunds to pay, the law firm sued and the debtor filed bankruptcy. The debt was held nondischargeable by the bankruptcy court but ultimately held dischargeable by the Supreme Court. The Court found that the phrase in §523(a)(2)(B) about a statement "respecting" a debtor's financial condition referred to any information that "has a direct relation to or impact on the debtor's overall financial status." *Id.* at 720. And the Court found that the *Appling* debtor's representation about the source of funding for his promised payments was a statement about his financial condition and therefore needed to be in writing to be actionable under §523(A)(2)(B). *Id.* at 712-14. Since *Appling*, a number of courts have considered whether particular statements are about a debtor's

financial condition and must therefore be in writing if they are to form a basis for a nondischargeability complaint. *See Potter*, 616 B.R. at 752 (collecting cases).

A full discussion of the nuances of *Appling* is not needed at this point. Legacy has not provided even a clue as to what statements or conduct of the Debtor provide a basis for the legal conclusion that he made false representations when he borrowed the funds with MLB and that he never intended to have MLB or himself repay the loan. Only when such facts are pleaded can an analysis be done to determine whether the statements are about the Debtor's or MLB's financial condition and must be in writing to be actionable. And only when such facts are pleaded can an analysis be done to determine whether Legacy can state a plausible claim for relief under either §523(a)(2)(A) or §523(a)(2)(B). If Legacy repleads, it must do so in a clear manner that will allow the required analysis to be done.

## Count II

Count II is labeled as seeking a denial of the Debtor's discharge under §727(a)(4)(A) which provides for such relief if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A). To state a claim for relief under §727(a)(4)(A), a plaintiff must plausibly allege that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the

statement related materially to the bankruptcy case. *Stamat v. Neary*, 635 F.3d 974, 978-79 (7th Cir. 2011). Bankruptcy schedules, statements of financial affairs, and testimony at a creditors meeting or a Rule 2004 examination are all statements made under oath for purposes of §727(a)(4)(A). *Laying v. Pansier (In re Pansier)*, 613 B.R. 119, 160 (Bankr. E.D. Wis. 2020). Because a fraudulent act is an element of the cause of action, fraud must be pleaded with particularity to state a claim. *New Century Bank v. Carmell (In re Carmell)*, 424 B.R. 401, 418 (Bankr. N.D. Ill. 2010); Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

In Count II, Legacy alleges that the Debtor provided one set of facts in his petition and schedules and another set of facts when questioned at his creditors meeting. Legacy says that both sets of facts cannot be true and that the Debtor therefore acted with fraudulent intent or reckless indifference either in preparing his documents or in testifying at the meeting. No particular statements in either the Debtor's filed documents or his testimony are identified in Count II. An allegation is also made that the false statements relate materially to this case but, again, no specific statements are identified and no specific facts are pleaded in Count II in support of the allegation.

Count II incorporates by reference the prior 59 paragraphs of the complaint that include the 53 paragraphs of introduction and the 6 paragraphs of Count I that relate to the original loan transaction but, as far as the Court can tell, not to the issues raised in Count II. Paragraphs 34 through 59 of the introductory paragraphs are labeled as "False and Omitted Statements or Misrepresented in Bankruptcy Proceeding." Reviewing these specific paragraphs

and all the other introductory paragraphs provides some hints as to what Legacy is trying to say. Unfortunately for Legacy, however, the allegations are too cryptic and confusing to meet the required pleading standards.

For example, at paragraph 48, Legacy says "Segobiano's false characterization of monthly gifts made within 2 years before the filing for bankruptcy as an expense is a false oath, made under penalty of perjury." Yet nowhere in the section labeled as providing the facts about misrepresentations—paragraphs 34 through 59—are any facts pleaded about any gifts made or monthly expenses paid by the Debtor; the only allegation is the legal conclusion set forth in paragraph 48. Looking elsewhere in the introductory paragraphs, however, an allegation is made at paragraph 25 that the Debtor testified at the creditors meeting that he pays $2800 per month for his adult daughter's rent.

The Debtor listed the rent payment for his daughter as an expense on his Schedule J and apparently confirmed the payment during his testimony at the creditors meeting. Thus, this issue is not one where the Debtor's schedules set forth one set of facts and his testimony sets forth a different set of facts as alleged in Count II. Further, no facts are pleaded to establish that the payments are or were a gift or that the Debtor's making the payments relates materially to the case. Importantly, no facts are set forth that would support a finding that, notwithstanding the listing and disclosure of the payments on Schedule J, the Debtor's failure to list the payments again as gifts on his Statement of Financial Affairs was fraudulent. The facts as pleaded by Legacy suggest that the Debtor was not hiding the payments; nothing was pleaded to support an inference that

the Debtor acted fraudulently by disclosing the payments once but not twice on his documents. *4820 & 4901, LTD v. Tesler (In re Tesler)*, 647 B.R. 710, 723 (Bankr. N.D. Ill. 2023) (court cannot infer intent to defraud based solely on a debtor's failure to comply with the instructions for completing bankruptcy forms).

Legacy makes other allegations scattered through the introductory paragraphs of the complaint. Again, for example, it says that the Debtor undervalued real estate and personal property. At paragraph 52, Legacy, apparently referring to the valuations, says that the Debtor admitted at his creditors meeting that "these statements were not correct." But Legacy does not point to any particular statement that was not correct and does not allege what values might be correct in order to support an allegation that the statements, if incorrect, are material. And, again importantly, no facts are alleged to support an allegation that the false oaths, if made, were made with fraudulent intent. Further, suggesting that a presumption of fraud arises because the Debtor scheduled his home value for the amount he paid for it 20 years ago is not supported by case law and is insufficient to meet the required pleading standards.

Legacy also alleges at paragraph 38 that the Debtor understated his income on his Statement of Financial Affairs. At paragraph 41, Legacy says that the Debtor's personal income shown for 2024 was less than the amount of the loan proceeds paid to MLB by Legacy. But Legacy makes no claim that the loan proceeds were paid to the Debtor as compensation. To the contrary, at paragraph

16, it refers specifically to the fact that MLB purchased materials for a project with the loan proceeds. Legacy's allegation that "on information and belief" the Debtor received more income than disclosed, without providing any further details, is inadequate to state a plausible claim.

There are other allegations throughout the introductory paragraphs that may be intended to support the claim attempted to be pleaded in Count II. But the above examples show the problems with the pleading. The allegations in Count II are inadequate to support the claim, and searching through the many introductory paragraphs for support is a frustrating endeavor. The Court should not be burdened with trying to find sufficient allegations to support a claim when Legacy has failed to plead the necessary allegations in a clear and organized manner. Count II fails to meet the required pleading standards and must be dismissed.

*Count III*

Count III is labeled as seeking the denial of the Debtor's discharge under §727(a)(3), which provides for such relief if:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. §727(a)(3). A debtor has an affirmative duty "to produce books and records that accurately document its financial affairs." *Schaumburg Bank & Trust Co. v. Hartford (In re Hartford)*, 525 B.R. 895, 909 (Bankr. N.D. Ill. 2015)

(citations omitted). "The completeness and accuracy of a debtor's records are to be determined on a case-by-case basis, considering the size and complexity of the debtor's financial situation." *Baccala Realty, Inc. v. Fink (In re Fink),* 351 B.R. 511, 522-23 (Bankr. N.D. Ill. 2006) (citation omitted). Determining the adequacy of a debtor's records generally requires a "fact intensive inquiry." *Butler v. Liu (In re Liu),* 288 B.R. 155, 161 (Bankr. N.D. Ga. 2002).

In Count III, Legacy asserts the legal conclusion that the Debtor failed to keep and preserve adequate financial records that would provide sufficient information to ascertain the Debtor's and MLB's financial condition. By way of factual support, it alleges only that the Debtor admitted at his creditors meeting to "significant comingling" between his personal and business accounts. As with the other counts, Count III incorporates by reference all the prior paragraphs. Several of those paragraphs appear to provide some factual support for the claim attempted to be made, but Count III still falls short of stating a claim upon which relief can be granted.

One allegation that falls short is made at paragraph 42 wherein Legacy complains that the Debtor, at his creditors meeting, "was unable to provide an accurate and complete account of his financial affairs[.]" Neither §727(a)(3) nor any other provision of the Code or Rules requires or even anticipates that a debtor would be called on to make a complete accounting of his financial affairs at his creditors meeting. The Debtor is required to provide some documents, including pay advices and his last tax return, to the trustee before the meeting. 11 U.S.C. §521(a)(1)(B)(iv), (e)(2)(A). And the Court is aware that the trustees

generally have a list of additional requested documents to be provided before the meeting; the list often includes several years of tax returns and at least 90 days of pre-filing bank statements. No allegation is made that the Debtor failed to comply with either his statutory obligations or the requests of the trustee regarding pre-meeting document production. A debtor should not be called on to provide a complete accounting from memory of his financial affairs at the first meeting, and a failure to be able to do so does not support a finding that a debtor does not have the records to provide an accounting if given a fair opportunity to do so.

Another nonstarter is the allegation that, because the Debtor admitted that he had his current pay deposited into his wife's account, he failed to keep adequate records.[2] As set forth above, there is no allegation that the Debtor failed to provide his pay advices to the trustee that should show the depositing of his net pay. And the Debtor's employer would most certainly have records of the deposits as would the Debtor's wife's bank. Adequate record keeping does not require hand kept records; bank statements and other third-party accountings can serve to provide the required records of a debtor's financial transactions. Legacy may be unhappy about the Debtor's transfer of his income to his wife, but it has failed to allege any facts that suggest that there are no records of such transfers.

---

[2] Actually, the complaint alleges at paragraph 22 only that the Debtor "changed his income direct deposit[.]" The complaint fails to provide any more details. Legacy's brief elaborates on the issue, but it does not save the defective complaint.

Legacy comes closest to stating a claim with its allegations of comingling. Legacy alleges both comingling by the Debtor between his personal and business accounts and comingling of funds in both accounts by his son's use of the accounts. But Legacy makes no factual allegation that the records of such accounts do not exist; the Court cannot presume the bank account records do not exist. And Legacy makes no factual allegation that the records are such that the comingling cannot be sorted. Courts have held that comingling can form the basis for finding inadequate record keeping. *See Union Planters Bank v. Connors*, 283 F.3d 896, 900 (7th Cir. 2002); *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 996-97 (Bankr. N.D. Ill. 1992). The cases do not hold, however, that comingling always requires a finding of inadequate record keeping; rather, the actual records need to be examined to determine whether the comingling can be sorted out and a clear accounting can be made from the records. *Id.* Here, Legacy falls short because it alleges only that the Debtor could not provide that clear accounting in his oral testimony at his creditors meeting.

In pleading a claim under §727(a)(3), a plaintiff is not necessarily required to plead details of what documents "it requested but could not obtain" or to allege what "records should have been kept but are missing." *Tesler*, 647 B.R. at 720. Allegations that a debtor failed to comply with prior state court discovery or failed to comply with requested production at a 2004 examination may be sufficient. *Id.* Here, Legacy makes no allegation of ever asking for any documents or reviewing any documents that might have been produced to the trustee. It alleges only that the Debtor could not give an accounting at his creditors meeting.

Absent any allegation that the Debtor, after some notice or request, could not or did not produce records or produced inadequate records, Count II fails to state a claim upon which relief can be granted.

*Count IV*

Count IV is labeled as seeking a denial of the Debtor's discharge for failing to explain the loss or deficiency of assets under §727(a)(5) which provides for such denial if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. §727(a)(5). A court may deny a discharge to a debtor under §727(a)(5) if "the debtor does not adequately explain a shortage, loss, or disappearance of assets." *First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983) (citations omitted). The party objecting to discharge must establish that the debtor owned substantial and identifiable assets that are no longer available; the debtor must then provide a satisfactory explanation for the loss. *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005). A debtor's explanation should generally be supported by documentation. *Id.* Although the required proof will come later, the complaint must, at a minimum, allege a factual basis for each element of the cause of action. *Iqbal*, 556 U.S. at 678-79.

In paragraph 76 of Count IV, Legacy alleges that the Debtor "has failed to adequately explain the disposition of the income he received from MLB

Construction Services LLC and/or Related."[3] And at paragraph 77, Legacy says that the Debtor "has failed to supply adequate records or provide a satisfactory explanation to justify the nondisclosure or deficiency of the income and/or assets." As with the other counts, Legacy has incorporated all prior paragraphs— 1 through 74 at this point—in Count IV. Because the allegations made in Count IV are cryptic and lack detail, a review of the prior paragraphs is necessary.

Legacy is focused on the Debtor's income and may be asserting that the Debtor's deposit of his income into his wife's account creates an unexplained loss. But as stated above, records most certainly exist to document those transfers. And the Debtor's Schedules I and J provide details of the amount of income now being received and the monthly expenditure of all that income. Legacy may not like the Debtor's expenditures and may believe some expenditures such as payment of his daughter's rent are improper. But that is a different issue than whether the disposition of the income has been explained. The Debtor's annual income as shown at paragraph four of his Statement of Financial Affairs is similar to the income he is earning now and suggests that the schedules fairly document the disposition of his regular income.

Alternatively, Legacy may be focusing particularly on the Debtor's admission at his creditors meeting that a $37,800 check received for work done by MLB was deposited in his personal account on October 2, 2024. The

---

[3] This is another example of confusion in the pleadings that Legacy tries to fix in its brief. "Related" is not defined or explained in the complaint. In the brief, however, Legacy says "Related" is the name of the entity involved in the project for which it lent funds and is the entity that made a payment to MLB and the Debtor that the Debtor admits depositing in his personal account. The explanation in the brief does not fix the confusion in the complaint.

allegations about the check are sufficient to identify an asset that the Debtor owned. But the complaint says specifically that the funds went into the Debtor's bank account, suggesting that records exist as to the disposition of the funds. As set forth above, the trustees generally require the production of several months of bank statements and there is no allegation that the Debtor here failed to comply with the request or that either the Debtor or trustee refused to share that production with Legacy. Legacy makes no allegation that the disposition of the asset has not been properly documented or explained; to the contrary, the only fair reading of the allegations is that the money went into a bank account for which records exist. The allegations of Count IV are inadequate to state a claim upon which relief can be granted.

## IV.   Conclusion

The complaint must be dismissed because none of the counts are adequately pleaded to state a claim upon which relief can be granted. That is largely due to the confusing set of facts pleaded as introductory and incorporated into each count with little to no indication of what facts are intended to support which count. Further, the complaint is replete with labels and conclusions and the formulaic recitation of the elements of the claims attempted to be pleaded. Legacy will be given leave to replead but must put some effort into streamlining the complaint and clearly pleading each claim.

The posture of the case is that the Debtor is without counsel and may not be interested in defending the case. That is his choice. But Legacy cannot count

on the Debtor defaulting as it goes about repleading and is admonished that if similar problems exist with an amended complaint, a prove-up will be required before any judgment is entered even if the Debtor does not respond and a default is entered. The Debtor is likewise admonished, however, that the Court is not trying the case for him. If he does not hire counsel or respond to the amended complaint, he may be denied his discharge or his debt to Legacy may be excepted from his discharge notwithstanding weaknesses in Legacy's case.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###